# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Jess Guy Anscott, | 2:13-cv-01833-JAD-VCF |
| Petitioner | **Order Dismissing Petition and Closing Case** |
| v. | [ECF No. 11] |
| Brian Williams, et al., | |
| Respondents | |

Pro se petitioner Jess Guy Anscott—an adjudicated habitual criminal—is on parole after serving ten years in prison for pleading guilty to possessing a stolen vehicle.[1]  He petitions for a writ of habeas corpus under 28 U.S.C. § 2254.[2]  Anscott forever abandoned his unexhausted claims,[3] so I now review his remaining claims on their merits.  I find that they are meritless, so I dismiss his petition with prejudice.

### Background

Anscott accepted a plea bargain in one of three concurrent criminal cases that he had pending.  Under the plea agreement, he pled guilty to one count of felony possession of a stolen vehicle[4] and stipulated to a 5–12 1/2-year sentence under the "small" Nevada habitual criminal statute in all three state-court cases.[5]  The State did not oppose Anscott being released from custody pending sentencing, but the plea agreement imposed a 10-years-to-life sentence under

---

[1] ECF No. 11 at 2.

[2] ECF No. 11.

[3] ECF No. 29.

[4] ECF Nos. 16-17, 16-18, and 16-19.

[5] ECF No. 16-19 at 2.

the "large" Nevada habitual criminal statute if he failed to appear for sentencing.[6] Anscott failed

to appear, so he was held to his agreement.[7] He challenged his conviction in the state courts on

direct appeal and post-conviction review.

## Standard of Review

The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly

deferential" standard for evaluating a state court's decision to deny a petition for habeas corpus

on its merits.[8] A federal court may not grant habeas relief merely because it might conclude that

the state court's decision was incorrect.[9] The federal district court may grant relief only if the

state court's decision was: (1) contrary to or an unreasonable application of clearly established

U.S. Supreme Court law; or (2) was based on an unreasonable determination of the facts in light

of the evidence presented at the state-court proceeding.[10]

A state court's decision is contrary to clearly established law only if it applies a rule that

contradicts the governing law or if the decision confronts a set of facts that are materially

indistinguishable from a Supreme Court decision and nevertheless arrives at a different result.[11]

A state court need not even be aware of Supreme Court precedents, as long as neither the

reasoning nor the result of its decision contradicts them.[12] "A federal court may not overrule a

state court for simply holding a view different from its own, when the precedent from [the

Supreme] Court is, at best, ambiguous."[13] And when a state court's factual findings are

[6] *Id.* at 2–3.

[7] ECF Nos. 16-20, 16-21, 17-19 and 17-24.

[8] *Cullen v. Pinholster*, 563 U.S. 170 (2011).

[9] *Id.* at 202.

[10] *Id.* at 181–88; *see also* 28 U.S.C. § 2254(d).

[11] *See, e.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003).

[12] *Id.*

[13] *Id.* at 16.

2

challenged, federal courts "must be particularly deferential" to those findings.[14]  State-court

factual findings are presumed to be correct unless the petitioner can rebut that presumption by

clear and convincing evidence.[15]  The petitioner bears the burden of proving by a preponderance

of the evidence that he is entitled to habeas relief.[16]

## Discussion

**A.      Ground 1(a): Ineffective assistance of counsel—alleged coercion of guilty plea**

In ground 1(a), Anscott alleges that he was denied effective assistance of counsel in

violation of the Sixth and Fourteenth Amendments because counsel coerced him into pleading

guilty.  Counsel allegedly misrepresented that Anscott would certainly receive large habitual-

criminal treatment if convicted at trial.  Anscott urges that counsel failed to advise him that the

non-violent nature of his criminal history actually made large habitual-criminal treatment

unlikely.[17]

Defense counsel Nadine Morton testified at the state post-conviction evidentiary hearing

that she advised Anscott prior to his plea that: (1) "he was potentially facing habitual—it wasn't

mandatory habitual, but he was eligible for the large habitual, and we discussed the different

options a judge had in sentencing him to the habitual"; (2) the sentencing judge in this particular

one of the three cases would "generally not habitualize somebody for non-violent offenses," but

his separate counsel in his other two cases would have to address the sentencing tendencies of the

judge in those cases; and (3) "he had to know that he was still at risk or jeopardy of, if we lost

any one of the three trials, that he was eligible for the large habitual."[18]

---

[14] *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004); *see also* 28 U.S.C. § 2254(d)(2).

[15] 28 U.S.C. § 2254(e)(1).

[16] *Cullen*, 563 U.S. at 569.

[17] ECF No. 11 at 3–5.

[18] ECF No. 19-14 at 18–19.

The two-pronged test of *Strickland v. Washington*[19] applies to a challenge to a guilty plea based on alleged ineffective assistance of counsel.[20]  A petitioner seeking to set aside a guilty plea due to ineffective assistance of counsel must demonstrate that: (1) his counsel's performance fell below an objective standard of reasonableness; and (2) the defective performance resulted in actual prejudice.[21]  On the performance prong, the question is not what counsel might have done differently but whether counsel's decisions were reasonable from counsel's perspective at the time; and I must start with a strong presumption that counsel's conduct fell within the wide range of reasonable conduct.[22]  On the prejudice prong, the petitioner must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[23]  In the guilty-plea context, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[24]  This determination is "made objectively, without regard to the 'idiosyncrasies of the particular decisionmaker.'"[25]

The Nevada Supreme Court's rejection of Anscott's claim was neither contrary to nor an unreasonable application of clearly established federal law.  The Court held that Anscott "failed to demonstrate that [his trial] counsel's performance was deficient or that he was prejudiced[,]" especially in light of his counsel's testimony that she advised him on the possibility of large

---

[19] *Strickland v. Washington*, 466 U.S. 668 (1984).

[20] *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

[21] *Id.* at 58–59.

[22] *See, e.g.*, *Beardslee v. Woodford*, 327 F.3d 799, 807–08 (9th Cir. 2003) (internal citation omitted).

[23] *Id.*

[24] *Hill*, 474 U.S. at 59.

[25] *Id.* at 60 (quoting *Strickland*, 466 U.S. at 695).

4

habitual-criminal treatment.[26]  And Anscott "received a substantial benefit in pleading guilty"

because the two charges of possessing a stolen vehicle were combined into one, and the State

stipulated that it would seek lesser habitual-criminal treatment unless he violated the plea

agreement.  And, the Nevada Supreme Court added, Anscott failed to demonstrate that he would

not have agreed to the plea bargain—and accepted all of its benefits—but for his counsel's

alleged errors.[27]  Anscott therefore failed to satisfy either of the *Strickland* prongs.  So, ground

1(a) does not provide a basis for relief.

**B.      Ground 1(b): Ineffective assistance of counsel—alleged exculpatory evidence**

In ground 1(b), Anscott alleges that he was denied effective assistance because his

counsel failed to investigate exculpatory evidence establishing that he had permission to use a

vehicle.[28]  Anscott was originally charged in count 1 with possession of a 2005 Nissan that had

been stolen from Jeanie Tatum, and in count 2 with possession of a 2004 Chinook motor home

that had been stolen from Darol Cline.[29]  Anscott pled guilty to a single count of possession of a

stolen vehicle by possessing the Nissan "and/or" the Chinook motor home.[30]

Prior to sentencing, Anscott moved for a new trial on a number of grounds, including

ineffective assistance of counsel and newly discovered evidence.  Anscott presented a

purportedly notarized document stating that Dana Spalding gave him permission to use the

Chinook motor home in exchange for paying the rent for the mobile-home-park space and

allowing her access to the motor home at any time.[31]  The state district court denied the motion,

---

[26] ECF No. 20-17 at 3–4.

[27] *Id.*

[28] ECF No. 11 at 6–8.

[29] ECF Nos. 16-4, 16-11.

[30] ECF Nos. 16-18, 16-19.

[31] ECF No. 17-3.

and the Supreme Court of Nevada affirmed.[32]

On state post-conviction review, Anscott claimed that Morton was ineffective for failing to investigate the purportedly notarized permission slip. The Nevada Supreme Court rejected the claim, reasoning that Anscott had failed to demonstrate that counsel's performance was deficient or that he was prejudiced. Morton testified at the state-court evidentiary hearing that: (1) she attempted to locate Dana Spalding prior to Anscott's plea but was unable to find her;[33] (2) Spalding was not the owner of the motor home;[34] (3) there was evidence that both vehicles were "punched," i.e., the ignitions had been pulled so that they could be started without a key;[35] (4) the police reports reflected that Anscott made excited utterances at the time of his arrest indicating that he knew that the vehicle was stolen;[36] (5) relying on Spalding's testimony thus "would've been a major problem at trial" even if she could have been located, and Morton explained that issue to Anscott;[37] (6) she received the Spalding document from a relative of Anscott after he had been picked up on a bench warrant, which was after he failed to appear for sentencing;[38] and (7) after she provided the document to the prosecution, she "was alerted that there was a problem" with the notary.[39]

In light of Morton's testimony, Anscott failed to demonstrate that she did not investigate a potential witness and failed to demonstrate a reasonable probability that he would not have

[32] ECF Nos. 17-15 at 5, 18-17.

[33] ECF No. 19-14 at 20–21, 23–24.

[34] *Id.* at 21–22.

[35] *Id.* at 21, 25–26.

[36] *Id.* at 21.

[37] *Id.* at 22–24.

[38] *Id.* at 20, 24.

[39] *Id.* at 24. The State asserted at sentencing that the notary had no record of notarizing any document for Spalding and that her notary stamp and book had been stolen from a storage unit. ECF No. 17-19 at 7, 23.

pleaded guilty but for counsel's alleged errors. And, "because the notarized document related only to the use of the motor home and the charge related to two stolen vehicles, [Anscott] could not demonstrate prejudice as he still would have been charged with possession of a stolen vehicle."[40] So, the Nevada Supreme Court's rejection of this claim was neither contrary to nor an unreasonable application of clearly established federal law.

While satisfying *Strickland*'s high bar is "never an easy task," federal habeas review of a state court's rejection of an ineffective-assistance claim is "doubly deferential" when reviewing counsel's performance under AEDPA.[41] That is, the federal court must take a "highly deferential" look at counsel's performance through the also "highly deferential" lens of § 2254(d).[42] "The question is whether there is *any* reasonable argument that counsel satisfied *Strickland*'s deferential standard."[43] Strategic choices made after a reasonable investigation are "virtually unchallengeable"; and a decision not to investigate further "must be directly assessed for reasonableness in all of the circumstances, applying a heavy measure of deference to counsel's judgments."[44]

There is a reasonable argument that Morton satisfied *Strickland*'s deferential standard. She tried—but was unable—to locate Spalding before Anscott pled to the single possession-of-a-stolen-vehicle charge. And she reasonably decided that the "notarized" letter would do more harm than good. So, it was not unreasonable for the Nevada Supreme Court to conclude that Anscott failed to demonstrate that Morton was deficient in representing him. The Court also held that Anscott could not demonstrate prejudice. Anscott pled guilty to possession of a stolen vehicle by possessing the 2005 Nissan "and/or" the 2004 Chinook motor home. Even if the

---

[40] ECF No. 20-17 at 4.

[41] *Cullen*, 563 U.S. at 190, 202.

[42] *Id.*

[43] *Harrington v. Richter*, 562 U.S. 86, 106 (2011) (emphasis added).

[44] *Strickland*, 466 U.S. at 690–91.

7

notarized letter could have successfully challenged the charge with respect to the Chinook motor home, it would do nothing to the charge with respect to the Nissan and would not change the ultimate conviction. The Court's holding that Anscott failed to satisfy either *Strickland* prong was therefore not an unreasonable application of the law. Ground 1(b) does not provide a basis for relief.

## C.    Ground 1(c): Ineffective assistance of trial counsel—communication

In ground 1(c), Anscott alleges that he was denied effective assistance because Morton failed to communicate with him while preparing a defense.[45] The state district court denied the claim because "Anscott [did] not explain how communicating with his trial counsel would have resulted in a more favorable outcome. 'Bare' and 'naked' allegations are not sufficient, nor are those belied and repelled by the record."[46] The Nevada Supreme Court did not explicitly address this claim separate and apart from Anscott's other claims, but its implicit rejection was neither contrary to nor an unreasonable application of *Strickland*. The Nevada Supreme Court was only required to give this claim as much attention as Anscott did, and because Anscott did not even attempt to satisfy *Strickland*, it was not unreasonable for the Nevada Supreme Court to summarily reject the claim. This claim—without any facts to support it—does not establish a viable basis for habeas relief.

## D.    Ground 2(a): Ineffective assistance of appellate counsel

In the exhausted portion of ground 2(a), Anscott alleges that his appellate counsel was ineffective because counsel failed to file a copy of the plea canvass and therefore failed to adequately support Anscott's claims on direct appeal.[47] The Nevada Supreme Court rejected this claim because Anscott "failed to demonstrate prejudice, as he [did] not identify the issues that appellate counsel should have raised and did not explain how any issues would have been

---

[45] ECF No. 11 at 9.

[46] ECF No. 20-1 at 6 (citing to *Hargrove v. State*, 686 P.2d 222, 224 (Nev. 1984)).

[47] ECF No. 11 at 13.

8

successful had appellate counsel provided transcripts on appeal."[48]

The Court's rejection of the bare and unsupported claim presented on post-conviction appeal was neither contrary to, nor an unreasonable application of, clearly established federal law. Federal court review is limited to the record before the state court that adjudicated the claim on the merits.[49] The state court's determination that Anscott failed to demonstrate prejudice on the record before it was not an unreasonable application of *Strickland*. Ground 2(a) does not provide a basis for relief.

### Conclusion

Accordingly, IT IS HEREBY ORDERED that Anscott's petition for a writ of habeas corpus **[ECF No. 11] is DENIED** on its merits, and **this action is DISMISSED** with prejudice. Because reasonable jurists would not find my decision to be debatable or wrong, I decline to issue a certificate of appealability. The **Clerk of Court** is directed to **ENTER JUDGMENT in favor of respondents and against Anscott, DISMISS this action with prejudice, and CLOSE THIS CASE**.

DATED: March 8, 2018.

_____
U.S. District Judge Jennifer A. Dorsey

---

[48] ECF No. 20-17 at 4–5 (citing *Kirksey v. State*, 923 P.2d 1102, 1114 (Nev. 1987) ("It is appellant's responsibility to present relevant authority and cogent argument; issues not so presented need not be addressed by this court.")).

[49] *Cullen*, 563 U.S. at 182.